PIONEER AUTOMOBILE SERVICE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 78866, 79001.    Promulgated June 24, 1937.

*Stanley S. Waite, Esq.*, for the petitioner.
*Harold F. Noneman, Esq.*, and *W. S. Alt, Esq.*, for the respondent.

## OPINION.

HILL: The principal issue here involves the question, broadly speaking, of how petitioner's taxable income should be computed in the light of the peculiar facts relating to the income accrued, and the expenses incurred in the earning of such income.

The essential facts, briefly summarized, show that during the taxable years petitioner entered into contracts with automobile owners whereby for a stated consideration, payable in installments, petitioner obligated itself to render certain services during the lives of

the respective owners. These contracts are referred to as life memberships.

Petitioner kept its books of account and made its income tax returns on an accrual basis. It accrued and included in gross income for each year the full amount of the consideration paid or to be paid on each contract executed during the year; and in computing the deficiencies respondent likewise included in gross income the full amount of such consideration. Petitioner set up on its books a "reserve for life memberships", and annually made additions to this reserve on the basis of the number of contracts written each year. The additions made for the taxable years to the "reserve for life memberships" petitioner deducted from gross income. These deductions were disallowed by respondent, giving rise in part to the deficiencies.

Petitioner's first contention is that the amounts of the additions to the reserve constituted a trust fund set aside and to be administered by it for the benefit of the contract holders, and that such amounts should be excluded from gross income. In the alternative, petitioner says that, if the reserve was not a trust fund, then its taxable income should be recomputed on a strictly cash basis in order to reflect clearly its true income. We can not agree with either of these contentions.

The applicable revenue acts require that net income shall be computed upon the basis of the taxpayer's annual accounting period in accordance with the method of accounting regularly employed in keeping the books of the taxpayer, unless the method employed does not clearly reflect income, in which event the computation shall be made in accordance with the method that does clearly reflect the income. Sec. 41, Revenue Acts of 1928 and 1932. It does not appear from the record before us that a computation on the basis of cash receipts and disbursements would more clearly reflect petitioner's income than on an accrual basis. The cash basis, therefore, may not under the statutes be used.

But there are also other serious objections to petitioner's alternative contention. Respondent's Regulations 74 and 77, article 322, the validity of which is not questioned here, require taxpayers to make application for permission to change from one method of accounting to another, and to furnish certain information in that connection. This petitioner did not do. Cf. *Ribbon Cliff Fruit Co.*, 12 B. T. A. 13; *Brown* v. *Helvering*, 291 U. S. 193, affirming 63 Fed. (2d) 66, affirming 22 B. T. A. 678.

Finally, petitioner has furnished no evidence respecting the items of income and deductions to be reflected in a recomputation of its taxable income on the cash basis. Petitioner's alternative contention can not be sustained.

Likewise, we find little difficulty in rejecting petitioner's main contention that the reserve constituted a trust fund. An extended discussion of this point is not deemed necessary. It is sufficient to point out that none of the elements of a trust is present. The parties have stipulated, and we have so found, that all the assets listed on petitioner's balance sheets for the taxable years were under the domination and control of the corporation, and that nothing was done to establish a trust with respect to those assets except as such trust might arise under the resolutions of the board of directors. It is true that the directors adopted a motion to provide for some form of a trust arrangement, but nothing further was done about the matter. Petitioner's assets, including the cash reserve funds, were used for general corporate purposes, and it made no agreement with the contract holders to establish a trust. Each contract merely contained the statement that "The Service Life Memberships are secured by a Reserve Fund which guarantees the servicing of this membership for life." This did not constitute the reserve a trust fund, nor did petitioner, so far as shown, otherwise declare that it held the reserve fund in trust, or treat it as such a fund. Cf. *Mt. Plymouth Corporation*, 25 B. T. A. 1201; *Acacia Park Cemetery Association*, 27 B. T. A. 233; affd., 67 Fed. (2d) 700; *Woodlawn Cemetery Association*, 28 B. T. A. 882.

The burden of petitioner's complaint is that if the total consideration paid or to be paid on each contract written for the taxable years is accrued as gross income, and if the additions to the reserve are not excluded from gross income as a trust fund or the gross income otherwise reduced by deductions for future costs of servicing the contracts, its taxable net income will not be clearly reflected.

The principle is authoritatively recognized that where a taxpayer's books are kept on an accrual basis, the fact that the exact amount of the liability had not been definitely fixed in the taxable year would not prevent the deduction from gross income for that year of the amount later paid on account of such liability. *Lucas* v. *American Code Co.*, 280 U. S. 445, 446.

However, here, as in the cited case, there are other obstacles which prevent application of the doctrine referred to. In the case before us the record is wholly insufficient to sustain a conclusion that the additions to the reserve for life memberships represent accruals, ascertained or ascertainable, of amounts of future expense for which a liability was incurred by petitioner under its contracts. The amount of the reserve represents only an estimate. We are not called upon under the facts here to determine whether a deductible accrual of ordinary business expense can rest upon a mere estimate for the reason that there is no evidence in the record that the

amount of the future expense is reasonably estimated. It is not clear from the petitioner's brief whether the additions to the reserve for the taxable years constituted a fund which petitioner estimated would produce sufficient income to pay the future expense, or whether it was estimated that the entire amount of such additions would be required to cover the cost of future service. In any event, there is no evidence of the reasonableness of an estimate on either basis.

Respondent's determination of the first issue is approved.

Under the second issue, petitioner contends that respondent erred in asserting the 25 percent delinquency penalty for failure to file its income tax return for the year 1931 within the time prescribed by law.

Section 291 of the Revenue Act of 1928 provides that in case of any failure to make and file the required return within the time prescribed by law, or by the Commissioner in pursuance of law, 25 percent of the tax shall be added to the tax, except that when a return is filed after such time and it is shown that the failure to file it was due to reasonable cause and not due to willful neglect, no such addition shall be made to the tax.

Petitioner's return for 1931 was required by law to be filed not later than March 15, 1932. It was filed three months and nine days later, on June 24, 1932. In the early part of 1932, presumably prior to March 15, petitioner's president inquired about the filing of the 1931 return of an employee who acted in the capacity of auditor and attended to the filing of its income tax returns. The employee stated that he had obtained an extension of time for the filing of the return, when as a matter of fact he had not done so. Later he embezzled some of petitioner's funds, but at that time was a trusted employee. This same employee prepared the return which was filed on June 24, 1932. Attached to the return was a statement signed by the petitioner's president to the effect that the return could not be filed within the time prescribed by law because of the fact that business conditions prevented the keeping of sufficient clerical help to compile the necessary information. The matters urged as an excuse, we think, are wholly insufficient.

The duty of preparing and filing a corporate return rests upon the responsible executive officers of the corporation, and Congress plainly expressed an intention that such responsibility is not to be lightly taken. The use of available clerical help in carrying on the activities of a corporation does not, in our opinion, excuse it for failure to file its return on time; nor do we think it a sufficient excuse to say that the president of the corporation, without doing anything further, merely spoke to a trusted employee about the

matter, and that such employee misrepresented the facts as to having obtained an extension of time within which to file the return. It was primarily the duty of the officer and not of the employee to see to it that the return was prepared and filed timely.

Furthermore, we think it is clear that the employee in question was guilty of willful neglect, and since the preparation and filing of the return was within the scope of his duties, this neglect is chargeable to the corporation. *Berlin* v. *Commissioner*, 59 Fed. (2d) 996; *Axel Holmstrom*, 35 B. T. A. 1092.

In *Eagle Piece Dye Works*, 10 B. T. A. 1360, 1368, the petitioner delegated authority to an accountant to execute and file its return. The Board held that the fact that the accountant did not know that the return for the fiscal year was required to be filed prior to the filing of returns for the calendar year within which the fiscal year ended, did not constitute the accountant any less the agent of the taxpayer, or become a mitigating circumstance, and upheld the imposition of the delinquency penalty.

In *Gus V. Winston*, 22 B. T. A. 1194, 1199, one of the petitioners admitted that his income tax return was not timely filed, but stated that he thought another person had looked after it. The person who was supposed to file the return forget it. The Board held that the delinquency penalty should be collected. The penalty was sustained on similar facts in *Rogers Hornsby*, 26 B. T. A. 591, 593. And see also *Frischkorn Development Co.*, 30 B. T. A. 8.

It is not a sufficient excuse for the tardy filing of the return that the corporation's agent believed that no return was required to be filed until after an audit had been made. *Charles E. Pearsall & Son*, 29 B. T. A. 747.

On the second issue, respondent's action is approved.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

---

LEECH, dissenting: The deficiencies here result from respondent's treating the taxpayer's receipts from life contracts on the accrual basis and its expenditures in carrying out those contracts, on the cash basis. Obviously, that method does not reflect the taxpayer's income supporting the contested tax. Such receipts and expenditures must be computed on the same basis. *Bonded Mortgage Co. of Baltimore* v. *Commissioner*, 70 Fed. (2d) 345.

The taxpayer returned his income for the years in controversy on the accrual basis. It thus included in that income the amounts receivable under the life contracts executed during that year, whether such amounts were actually received during the year or not.

Likewise, it deducted its estimated costs of meeting its *admitted liability* under those contracts for those years. If those estimated costs were reasonable, I think, the deductions of them were proper. *Lucas* v. *American Code Co.*, 280 U. S. 445; *United States* v. *Anderson*, 269 U. S. 422; *General Outdoor Advertising Co.* v. *Commissioner*, 89 Fed. (2d) 862.

Nothing disclosed in the majority opinion appears to establish the unreasonableness of those deducted estimated costs. And, even if it did, since the present record clearly reveals the contested deficiencies to be wrong, they can not stand—at least without a further hearing. *Helvering* v. *Taylor*, 293 U. S. 507.