J. Fleet Cowden and Lettie P. Cowden v. Commissioner.
Cowden v. Commissioner
Docket No. 1213-63.
United States Tax Court
T.C. Memo 1965-278; 1965 Tax Ct. Memo LEXIS 51; 24 T.C.M. (CCH) 1528; T.C.M. (RIA) 65278; October 21, 1965
*51 Held, that a sale of lots by a trust and the subsequent construction of a building by the trust (using a part of the proceeds from the sale in part payment for such construction), did not constitute a nontaxable exchange within the contemplation of section 1031 of the Internal Revenue Code of 1954. Held, further, that amounts expended by the petitioner, as attorney and trustee of the trust, on behalf of the trust in connection with litigation to clear title to the trust property (and in part payment of the original cost of the property) constituted additional cost of the property, and are therefore not deductible as ordinary and necessary expenses. Held, further, that the failure of the petitioners timely to file their income tax return for the taxable year 1959 was not due to reasonable cause and that the respondent property determined an addition to tax under section 6651 of the Code. Barry Golomb, for the petitioners. Albert R. Doyle, for the respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: The respondent determined a deficiency in income tax for the taxable year 1959 in the amount of $1,384.19 and an addition to tax, under section 6651 of the Internal Revenue Code of 1954, of $346.05. The issues presented are: (1) whether the sale of certain real property by a trust (the income of which is taxable to petitioner J. Fleet Cowden under section 671 of the Internal Revenue Code of 1954) and the subsequent construction by the trust of a building on a parcel of land contiguous to the property sold constituted a nontaxable exchange within the meaning of section 1031 of the Code; (2) whether certain amounts expended by petitioner in connection with acquiring and clearing title to the land held by the trust, constituted expenses deductible by the petitioner; *55 and (3) whether the petitioners are liable for an addition to tax under section 6651 of the Code for failure to timely file an income tax return for the taxable year 1959. Findings of Fact Some of the facts have been stipulated and are incorporated herein by this reference. Petitioners are husband and wife who resided in Sudbury, Massachusetts, throughout the year 1959. They filed a joint Federal income tax return for the taxable year 1959 on April 27, 1961, with the district director of internal revenue, Boston, Massachusetts. Petitioner Lettie P. Cowden is a party herein only by reason of having filed a joint return with her husband, J. Fleet Cowden, and the latter will hereinafter be referred to as the petitioner. Petitioner is an attorney at law and is duly admitted to practice before the courts of the Commonwealth of Massachusetts and various courts of the United States. He has been actively engaged in the practice of law since 1951 and his practice has been exclusively in Massachusetts. In November 1953, the petitioner executed and recorded a declaration of trust whereby he created, pursuant to Massachusetts law, a trust known as the Deirdron Trust (hereinafter referred *56 to as the trust), of which he was the trustee acting without compensation. Upon creation of the trust the petitioner transferred to himself as trustee certain property located in Sudbury, Massachusetts, described as a parcel of undeveloped woodland consisting of approximately 10 acres. In or about 1954 local proceedings were commenced by unrelated third parties to rezone an area which included the property in question. Subsequently the petitioner, as trustee, caused the property of the trust to be subdivided into 11 lots. It was the intention of the petitioner, as trustee, to retain one corner of the parcel of land, consisting of one lot, and to transfer the remainder, consisting of 10 lots, to a builder, in consideration for a building to be constructed by the builder on the retained lot. It was contemplated that the building, which was to be of a medieval type featuring a great hall, might be used as a ballet school, a small theatre, a meeting hall, a conference room, or a church or synagogue. It was the petitioner's purpose to have the trust hold the property, thus improved, for the production of income and for enhancement in value. In 1954 an architect whom the petitioner *57 had engaged to design the building completed the plans for the building. It was the architect's opinion that the building could be constructed for $25,000 or less. At that time the value of the other 10 lots was estimated by the petitioner to be between $25,000 and $30,000. In 1954 the petitioner contacted a builder and attempted to effectuate an agreement with the builder to construct the desired building on one lot in exchange for a transfer of the other 10 lots to the builder. However, no such agreement was ever consummated with such builder because the title to the land was the subject of pending litigation. In early 1958 the petitioner entered into a written agreement, the details of which are not shown, with one Henry J. Moulton, a builder, with respect to the construction of the proposed building and the conveyance of the 10 lots. In 1959 Moulton refused to construct the building, but claimed the right to receive a conveyance of the 10 lots. The petitioner consulted other counsel and was advised that Moulton could not legally enforce his claim for a conveyance of the lots, but that he might bring a lawsuit which would involve the property in litigation for a considerable *58 time. Therefore, and for the additional reason that the petitioner could not find another builder who would agree to the construction of the building in exchange for the 10 lots, the petitioner concluded that the only way to effectuate the plan was to sell the 10 lots to Moulton and to use the proceeds of the sale to construct the building. Accordingly, in 1959 the trust conveyed the 10 lots to Moulton and received therefor $31,000, which was deposited in a bank in the name of the trust. In 1959 the trust, through the petitioner as trustee, undertook to construct the proposed building on the remaining one lot. The petitioner hired all the subcontractors and wrote the contracts, bought and rejected material, and performed some of the work himself, such as painting and pouring concrete. He received no compensation from the trust for these services. Only the foundation of the building was completed in 1959. The trust did not have enough money to complete the building and the petitioner borrowed additional funds from a bank to enable the construction of the building to proceed. The building was substantially completed by July 31, 1960, and substantially according to the original design. *59 Although the building was neither designed for, nor intended to be, a residence for the petitioner and his family they, on July 31, 1960, left the house which they had rented for 9 years and moved into the building owned by the trust. The petitioner believed that this would be the most economical way for him and his wife to protect the property and complete the decorating and landscaping thereof. The building has never been completely finished, and has never been rented. The petitioners have continued to live there. In 1961 the petitioner gave up the law office which he had rented and thereafter conducted his law practice from the building owned by the trust. In his return for the taxable year 1959, the petitioner did not report any gain from the sale of the 10 lots to Moulton. In the notice of deficiency the respondent determined that the petitioner was taxable upon a capital gain resulting from the sale of the property by the trust, stating: It is determined that you realized a long-term capital gain in 1959 in the amount of $26,246.26 resulting from the sale of land in Sudbury, Massachusetts. Such gain is taken into account to the extent of 50 percent, or $13,123.13 in computing *60 taxable income. The petitioner also acted as attorney for the trust. In early 1954 he, as counsel and trustee, commenced a proceeding in court to remove a cloud on the title to the property of the trust. During the pendency of that litigation an adjacent landowner asserted a claim to all of the land by reason of adverse possession. The petitioner, in order to avoid delay, brought suit against such adjacent landowner to defeat such claim. The litigation continued until December 1958, when a decision was entered in favor of the trust, and such decision was affirmed on appeal in May 1959. During the course of the litigation, the petitioner performed all the legal services required with the exception of the trial work which was primarily conducted by two other attorneys. The petitioner made no charge to the trust for the legal services which he performed. In 1959, the petitioner himself paid out a total amount of $3,226.66 in connection with the litigation. This consisted of an undisclosed amount paid to the other counsel in the case, an undisclosed amount paid for surveyor's fees, and approximately $200 for printing the record for appeal purposes. In addition, in 1959 the petitioner *61 paid $50 representing an amount due but unpaid on the original purchase price of the land. It was the petitioner's intention and expectation that he would be repaid the amounts which he had paid on behalf of the trust, at such time as the trust should begin producing income. [1]
In his income tax return for the taxable year 1959, the petitioner claimed as a deduction $4,367.99 as the amount "disbursed to and for clients," which included the amount of $3,276.66 which had been expended on behalf of the trust. Of this item the respondent, in the notice of deficiency, disallowed the amount of $3,276.66, stating that this represented amounts expended which were attributable to the sale of land and which did not qualify as business expenses. Accordingly, the respondent, *62 in computing the gain of $26,246.26 derived by the trust from the sale of the 10 lots, treated the amount of $3,276.66 as an addition to basis, thereby reducing the gain from the sale by that amount. The petitioners did not file their Federal income tax return for the taxable year 1959 until April 27, 1961. In discussions which the petitioner had with his attorney in 1959 and 1960, prior to the time for filing his 1959 income tax return, such attorney rendered to the petitioner his opinion that the sale of the 10 lots and the construction of the building on the remaining one lot would constitute a nontaxable exchange. Based thereon, it was the petitioner's opinion that he would have no tax liability for the taxable year 1959. The 1959 return was not timely filed because at the due date the petitioner was busy with the construction of the building and also because he believed there would be no tax due. He did not request an extension of time for filing because he felt that it would serve no real purpose since he believed there would be no tax due. The petitioner did know, at the time his 1959 return was due, that he had gross income in excess of $600. In the notice of deficiency *63 the respondent determined that there was due from the petitioners an addition to tax in the amount of $346.05, pursuant to section 6651 of the Internal Revenue Code of 1954, for failure timely to file their income tax return for the taxable year 1959. The failure of the petitioners timely to file their income tax return for the taxable year 1959 was not due to reasonable cause. Opinion It has been stipulated that under the provisions of subpart E of subchapter J of chapter 1 of the Internal Revenue Code of 1954, [2] the income of the trust for the taxable year 1959 was attributable to the petitioner as grantor or settlor. *64 The respondent determined that the trust realized a long-term capital gain of $26,246.26 upon the sale in 1959 of the 10 lots and accordingly increased the petitioners' taxable income by $13,123.13. It is the petitioners' contention that the sale of the 10 lots and the subsequent construction of the building on the remaining one lot (the proceeds of the sale being used in part to pay certain litigation expenses for clearing title to the land and in part to pay a part of the cost of construction of the building) constituted a nontaxable exchange under the provisions of section 1031(a) of the Internal Revenue Code of 1954. [3] It is their position that the sale of the lots and the construction of the building were both elements of a composite transaction and that the sale cannot be viewed separately as resulting in the receipt of recognizable gain. *65 The evidence shows that it was the original intention of the petitioner, as trustee, to transfer 10 lots to a builder in consideration for the construction by the builder of a building on the one lot which was retained by the trust, and that the petitioner did, in 1958, enter into an agreement with one Moulton, a builder, with respect to a conveyance of the lots and the construction of a building. The details of such agreement are not disclosed, but in any event the evidence shows that Moulton did not construct the building, although the trust did transfer the lots to him for a consideration of $31,000. The trust, by the petitioner as trustee, then proceeded to construct the building on the remaining lot. Under the circumstances, we cannot view the sale of the lots and the construction of the building as parts of one transaction. Clearly, there was no exchange of properties as contemplated by section 1031(a) of the Code. In consideration for the transfer of the 10 lots the trust received no property, other than money, and, as stated, Moulton did not construct the building. A case closely in point is Detroit Egg Biscuit & Specialty Co., 9 B.T.A. 1365, in which the *66 taxpayer entered into an agreement to sell its plant to another party for cash. It then used a portion of the proceeds to purchase other property from a third party and constructed a building thereon. In holding that these transactions did not constitute an exchange, we stated in part: The facts do not sustain the petitioner in its contention that it exchanged property with the Goodyear Company. The latter contracted to buy the petitioner's property and made the cash payments called for by the contract. The petitioner purchased a new factory site and erected thereon a new factory building at a total expenditure of about 61 per cent of the price paid by Goodyear to the petitioner for its property. In our opinion the transaction was a sale, not an exchange, and the respondent was right in so treating it. See also Bloomington Coca-Cola Bottling Co. v. Commissioner, (C.A. 7) 189 F. 2d 1, affirming a Memorandum Opinion of this Court; and John M. Rogers, 44 T.C. 126. The petitioners, in support of their position that there was an exchange, cite Allegheny County Auto Mart, Inc. v. Commissioner, (C.A. 3) 208 F. 2d 693, affirming a Memorandum *67 Opinion of this Court; Louis W. Gunby, Inc. v. Helvering, (C.A.D.C.) 122 F. 2d 203, reversing 41 B.T.A. 884; Rev. Rul. 57-469, 1957-2 C.B. 521; and Rev. Rul. 61-119, 1961-1 C.B. 395. Each of those cases and rulings is distinguishable from the instant case. In each, although the transaction took the form of a sale of property by the taxpayer to another for cash, there was also a sale of property by such other party to the taxpayer, and the sales were mutually dependent. In each the position was taken that in such circumstances there was in substance an exchange, rather than two independent sales. In the instant case there was no transfer of property (other than money), in the form of a sale or otherwise, from Moulton to the trust. Since it is our conclusion that there was no exchange of properties, it becomes unnecessary to determine whether the lots transferred and the building constructed were property of a like kind to be held either for productive use in trade or business or for investment. The parties are in agreement that if the transaction did not constitute a nontaxable exchange the respondent's determination of the *68 amount of the taxable gain is correct. We accordingly approve the respondent's determination in this respect. The petitioner contends that the amount of $3,226.66 expended by him in connection with the litigation for the clearance of title to the property and the $50 which he paid on the original purchase price of the land constituted deductible ordinary and necessary expenses incurred in carrying on his business as a practicing attorney. It is his position that these were advances on behalf of his client, the trust, that such advances by attorneys on behalf of their clients constitute deductible expenses, and that when reimbursement occurs the attorney is in receipt of taxable income. We cannot agree with this view. The petitioner testified that he intended and expected to be reimbursed therefor. Clearly, such amounts constituted advances on behalf of the client and did not constitute expenses of the petitioner's law practice. Henry F. Cochrane, 23 B.T.A. 202; and Reginald G. Hearn, (C.A. 9) 309 F. 2d 431, affirming 36 T.C. 672, certiorari denied 373 U.S. 909. The petitioner testified that the expenditures were similar to *69 those which he made on behalf of other clients in the year in question and prior years, deductions for which were not disallowed by the respondent. In the absence of evidence as to the character of other expenditures we, of course, cannot conclude that other similar expenditures were allowed as deductions. But, even if it be assumed that this is true, the respondent is not estopped to deny the deductibility of the amounts in question. South Chester Tube Co., 14 T.C. 1229; and Ward v. Commissioner, (C.A. 6) 240 F. 2d 184, affirming 25 T.C. 815. These expenditures, since they constituted advances on behalf of the trust, are to be considered as expenditures made by the trust, and there arises the question whether they would be deductible by the trust, and therefore, by virtue of section 671 of the Code, deductible by the petitioner. Clearly, the litigation expenditures were incurred in defending or perfecting title to the property. As such they constitute capital expenditures and hence additional cost of the property. Therefore, such expenditures are not deductible either as ordinary and necessary expenses of carrying on a trade or business *70 under section 162 of the Code, or as ordinary and necessary expenses paid or incurred for the production or collection of income or for the management, conservation, or maintenance of property held for the production of income under section 212 of the Code. Louisiana Land & Exploration Co., (C.A. 5) 161 F. 2d 842, affirming 7 T.C. 507, and cases cited therein; Bowers v. Lumpkin, (C.A. 4) 140 F. 2d 927; and James C. Coughlin, 3 T.C. 420. See also sections 1.212-1(k) and 1.263(a)-2(c) of the Income Tax Regulations. And, of course, there can be no question that the $50 paid on the original purchase price of the land is a cost of the land. We approve the respondent's disallowance of the claimed deduction of $3,276.66. The petitioners also contest the respondent's determination of the addition to tax under section 6651 of the Code, [4] for failure timely to file their income tax return for the taxable year 1959. Whether a failure timely to file a return was due to reasonable cause is essentially a question of fact and the burden of proof is upon the petitioner. Eleanor C. Shomaker, 38 T.C. 192, *71 and cases cited therein.
Section 6012(a)(1) of the Code provides generally that every individual having for the taxable year a gross income of $600 or more shall file an income tax return. The petitioner testified that he knew that he had gross income of $600 or more, but that his failure to file a return when due was because he was of *72 the opinion, based at least in part upon advice of counsel, that there would be no tax due. He was not, however, advised by counsel that he need not file a return. In view of the provisions of section 6012(a)(1), we think it clear that Congress did not intend that a taxpayer's belief that no tax was due should constitute reasonable cause for failure to timely file a return. The petitioner also testified that he was busily engaged in constructing the building for the trust at the time the return was due, but we think it obvious that such fact does not constitute reasonable cause for failure to file timely. It is accordingly our opinion, and we have found as a fact, that the failure of the petitioners timely to file their income tax return for 1959 was not due to reasonable cause. We approve the respondent's determination of the addition to tax under section 6651 of the Code. Decision will be entered for the respondent. Footnotes
1. The $31,000 which the trust received in 1959 as proceeds from the sale of the 10 lots was used to pay an undisclosed amount of litigation expenses for clearing title to the land (not including however the amount of $3,226.66 advanced by the petitioner in 1959) and to pay, in part, the cost of construction of the building. In addition, the petitioner borrowed from a bank funds to further the construction of the building.↩
2. Subpart E consists of sections 671 to 678. Section 671 provides in part as follows: Where it is specified in this subpart that the grantor or another person shall be treated as the owner of any portion of a trust, there shall then be included in computing the taxable income and credits of the grantor or the other person those items of income, deductions, and credits against tax of the trust which are attributable to that portion of the trust to the extent that such items would be taken into account under this chapter in computing taxable income or credits against the tax of an individual. * * *↩
3. Section 1031(a) of the Code provides as follows: Nonrecognition of Gain or Loss From Exchanges Solely in Kind. - No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment.↩
4. Section 6651(a) provides as follows: Addition to the Tax. - In case of failure to file any return required under authority of subchapter A of chapter 61 * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate.↩