L. B. Vocelle and Kathleen J. Vocelle v. Commissioner.
Vocelle v. Commissioner
Docket No. 4502-65.
United States Tax Court
T.C. Memo 1968-5; 1968 Tax Ct. Memo LEXIS 291; 27 T.C.M. (CCH) 18; T.C.M. (RIA) 68005; January 9, 1968. Filed L. B. Vocelle, pro se, P.O. Box 488, Vero Beach, Fla. William L. McCulley, for the respondent. RAUM
Memorandum Findings of Fact and Opinion The Commissioner determined the following deficiencies in and additions to petitioners' income tax: *14
Additions to tax, I.R.C. 1954
Taxable Year
Income Tax
Sec. 6651(a)
Sec. 6653(a)
1960
$1,319.55
$65.98
1961
7,191.06
$1,797.77
481.44
1962
4,976.58
1,244.14
248.83
The parties have stipulated that, with comparatively minor exceptions, the adjustments responsible for the foregoing deficiencies are correct, and by amended pleadings the parties have agreed upon certain deductions allowable to petitioners for 1962 which had not theretofore been claimed. The decision to be entered under Rule 50 will reflect revised computations *292 necessitated by these concessions. There remains for decision only the correctness of the Commissioner's determination (1) that the untimely filing of petitioners' returns for 1961 and 1962 was not due to reasonable cause so as to make applicable the section 6651 (a) addition to tax; and (2) that at least part of the underpayment of tax for each of the three years 1960-1962 was due to negligence or intentional disregard of rules and regulations so as to make applicable the section 6653(a) addition to tax. Findings of Fact Certain facts have been stipulated by the parties, are so found, and are incorporated herein by reference. Petitioners L. B. Vocelle and Kathleen J. Vocelle, husband and wife, lived in Vero Beach, Florida, at the time they filed their petition in this case. [1] They filed joint income tax returns for the taxable years 1960, 1961 and 1962 with the district director of internal revenue in Jacksonville, Florida. L. B. Vocelle, 40 years old, graduated from high school in 1944, *293 received his A.B. degree from Florida State University in 1949, and his LL.B. degree from Florida Law School in 1952. He has been engaged in the general practice of law since August, 1952, first as an associate in the law firm of Vocelle & Walker, then as a partner in the firm of Vocelle & Vocelle, and since 1962 as an individual practitioner. Petitioner has never prepared his own tax returns and has never done any tax work in his professional capacity. Petitioners' income tax return for 1960, dated July 14, 1961, was received by the district director on July 17, 1961. [2] The return reported taxable income of $10,405.91. Petitioners' actual taxable income for 1960 was $14,498.42. The difference between reported and actual taxable income was due to items appearing in the following computation: 19 1960
Additions toTaxable Income
Understatement of income from pro- fession
Unreported gross receipts
$3,301.00
Excessive depreciation 192.04 $ 3,493.04
Unreported long-term capital gain of $400
200.00
Understatement of income from partnership
Excessive depreciation and amortization
$1,962.15
Less: Unreported part- nership loss (506.62)
1,456.53 * $ 5,149.57
Less: Itemized deductions in excess of $1,000 claimed standard deduc- tion (1,057.06)
Net understatement $ 4,092.51
Taxable income per return $10,405.91
Actual taxable income $14,498.42
*294 Petitioners' income tax return for 1961 was received by the district director on September 9, 1963. Petitioners received no extension of the time in which to file their return for 1961. The return for 1961 reported taxable income of $10,291.16. Petitioners' actual taxable income for 1961 was $29,548.38. The difference between reported and actual taxable income was due to items appearing in the following computation: 1961
Additions toTaxable Income
Understatement of income from pro- fession
Unreported gross re- ceipts
$17,349.82
Excessive depreciation
1,176.80
Unjustified business ex- pense deductions
1,740.65
$20,267.27
Unreported long-term capital gain of $3,741.97
1,870.99
Less:
Unreported partnership loss
(609.83)
Itemized deductions in excess of $1,000 claimed standard de- duction 2,271.21)
Net understatement $19,257.22
Taxable income per return $10,291.16
Actual taxable income $29,548.38 Petitioners' income tax return for 1962 was received by the district director on March 16, 1964. Petitioners *295 received no extension of the time in which to file their return for 1962. The return for 1962 reported adjusted gross income of $1,693.26 and no taxable income. Petitioner's actual taxable income for 1962 was $8,615.36 The difference between reported and actual taxable income was due to items appearing in the following computation: 1962
Additions toTaxable Income
Understatement of income from pro- fession
Unreported gross re- ceipts
$22,184.95
Excessive depreciation 3,799.08
Less:
Unreported deducti- ble business ex- penses or losses $13,221.08) $12,762.95
Less:
Unreported long-term capital loss of $947.31
(473.65)
Itemized deductions
(2,367.20)
Personal exemptions (3,000.00)
Net understatement $ 6,922.10
Adjusted gross income per return $ 1,693.26
Actual taxable income $ 8,615.36 The following table sets forth those items which caused the understatements of taxable income for the years in question: A. Unreported gross receipts from profession Reported grossreceipts
Unreported grossreceipts
Total grossreceipts
1960
$ 9,300.36
$ 3,301.00
$12,601.36
1961
29,257.24
17,349.82
46,607.06
1962
19,379.34
22,184.95
41,564.29
*296 B. Excessive depreciation and/or amortization Depre- ciationclaimed
Excessivedepre- ciation
Allowabledepre- ciation
1960
Profession
$1,920.37
$ 192.04
$1,728.33
Partnership
2,300.62
1,962.15
338.47
1961
5,000.00
1,176.80
3,823.20
1962
5,000.00
3,799.08
1,200.92
C. Unreported long-term capital gains Amount of gain
1960
$ 400.00
1961
3,741.97
D. Excessive business expense deductions Amount claimed
Excess amount
Allowable deduction
1961
$11,166.08
$1,740.65
$9,425.43
The following table sets forth the percentage of gross receipts and of taxable income that were reported in each of the years in question: 20 Petitioner's income tax returns for 1960, 1961, and 1962 were prepared and filed by Robert F. Cochrane, [3] a certified public accountant, qualified to practice in the State of Florida. Cochrane was educated at the University of Florida at Gainesville, began his accounting career in his father's office in West Palm Beach, Florida, in 1950, and practiced in Vero Beach from 1954 to 1963. He had done accounting work for petitioner's father since 1955 and for petitioner since *297 1959. Prior to 1960 and during the years in question, Cochrane, to the best of his knowledge, had full access to the records and accounts pertaining to petitioner's law practice. Beginning in 1960, the bookkeeping for petitioner's law practice was done in Cochrane's office from checks, deposits, and other data supplied by petitioner's secretary. The actual posting was done by data processing. As a matter of convenience, petitioner sometimes gave Cochrane signed blank returns. This procedure was followed with reference to petitioner's 1962 return and may have been followed with reference to the 1961 return. *298 Footnotes
1. Kathleen J. Vocelle is a party solely by virtue of having filed joint returns with her husband. L. B. Vocelle will sometimes hereinafter be referred to as Vocelle or petitioner.↩
2. The return bears a notation indicating that an extension of time until July 15, 1961 in which to file the 1960 return had been obtained. There is no contention that this return was untimely filied.↩
*. Although there appears to be a $1 error in arithmetic, this figure seems to be accepted by the parties as correct.↩
3. Cochrane signed petitioner's returns as "preparer" for 1960 and 1962. Although he did not thus sign the 1961 return, it was prepared in his office. Prior to April 15, 1962, petitioner contacted Cochrane about the 1961 income tax return. Cochrane told petitioner that he probably would not have the return ready on time and that he would apply for an extension. In fact, Cochrane never applied for an extension. This failure was due in part to a series of illnesses which kept him from his office in the early part of 1962 and to the heavy workload involved as a result of his being campaign treasurer in petitioner's Congressional campaign in 1962. Petitioner's 1961 return was ultimately filed on September 9, 1963. Prior to that date, Cochrane advised petitioner that various extensions for filing the 1961 return had been granted. In fact, because of Cochrane's procrastination and because of his being hospitalized for psychiatric treatment three times between June 3 and September 9, 1962, no requests for extensions were filed, and none were granted. Cochrane told petitioner that "indefinite" extensions had been obtained. Petitioner believed that an extension had been granted, but knew that it could not have been for an indefinite period. There were periods of time during 1962 when petitioner did not have physical control over his records. The majority of them, during the time Cochrane was hospitalized, were in Cochrane's office, and some were in the trunk of Cochrane's car, to which petitioner did not have a key. It was often hard for petitioner to communicate with Cochrane during 1962 because of the latter's frequent hospitalization. In addition, petitioner was absent from Vero Beach for much of 1962 because of his Congressional campaign. Petitioner's income tax return for 1962, due to be filed April 15, 1963, was not filed until March 16, 1964. In April, 1963, Cochrane filed a request for an extension for filing petitioner's 1962 return. Cochrane told petitioner that he had obtained an "oral extension" for an indefinite period for filing the return. No extension was in fact granted. Petitioner believed that an extension had been granted, but knew that it could not have been for an indefinite period. Cochrane knew that there was no such thing as a valid oral extension. Sometime prior to July 25, 1963, an internal revenue agent was assigned to audit petitioner's return for 1960. The audit was primarily concerned with certain deposits in petitioner's personal account, for which the sources could not be identified. The agent wrote to petitioner on July 25, asking to see copies of petitioner's returns for 1961 and 1962. Petitioner, on August 29, 1963, executed a power of attorney in favor of Cochrane with reference to the audit. The agent had his first personal contact with petitioner on September 6, 1963; the delay in this meeting was occasioned by Cochrane's requests for postponement for various reasons. The agent had a further meeting with petitioner on November 21, 1963, at which time petitioner indicated an awareness of his responsibility to file timely returns. The agent met with Cochrane on November 19, 1963, at which time Cochrane indicated that his inability to file timely returns for petitioner for 1961 and 1962 was due to the fact that petitioner would not take the time to identify the sources of certain deposits in his personal account. The agent had much difficulty in reaching Cochrane throughout the entire audit. The 21 agent received full disclosure and cooperation from petitioner during the audit, although there was some information that petitioner was unable to give because Cochrane had many of petitioner's records. At some time during the audit, Cochrane told the agent that a return had been filed, when in fact it had not been filed. Cochrane advised petitioner that, since there was an audit with reference to petitioner's 1960 and 1961 returns, he should wait to file his 1962 return until the issues involved in the audit were settled. In the latter part of 1963, petitioner sought the advice of another certified public accountant. In his notice of deficiency, the Commissioner determined that petitioner had understated his income tax liability for 1960, 1961 and 1962. He also determined 25 percent additions to tax under section 6651(a) for 1961 and 1962 for delinquency in filing returns for those years, and 5 percent additions to tax under section 6653(a) for 1960, 1961 and 1962 for negligence in respect of underpayment for those years. The parties have subsequently agreed that the actual understatements of taxable income are as set out above. Opinion RAUM, Judge: 1. Late filing, sec. 6651 (a): Section 6651(a), 1954 I.R.C., provides in part as follows: SEC. 6651. FAILURE TO FILE TAX RETURN. (a) Addition to the Tax. - In case of failure to file any return required under authority of subchapter A of chapter 61 (other than part III thereof) * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate. (Emphasis supplied.) "The penalty is not primarily punitive in nature, but is an attempt to protect the revenue." Plunkett v. Commissioner, 118 F. 2d 644, 650 (C.A. 1). It is well-settled that, to avoid this addition to tax, it is not enough merely to show lack of willful neglect; reasonable cause must be shown. West Virginia Steel Corporation, 34 T.C. 851, 861; Charles E. Pearsall & Son, 29 B.T.A. 747. Section 301.6651-1(a)(3), Proced. & Admin. Regs., provides in part: "If the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time, then the delay is due to a reasonable cause. See also Southeastern Finance Co. v. Commissioner, 153 F. 2d 205 (C.A. 5), affirming 4 T.C. 1069. The burden is on the taxpayer to make an affirmative showing of reasonable cause. Lee v. Commissioner, 227 F. 2d 181, 184 (C.A. 5), certiorari denied 351 U.S. 982; Eleanor C. Shomaker, 38 T.C. 192, 202. The question of reasonable cause is purely factual. Southeastern Finance Co. v. Commissioner, supra. Petitioner's income tax return for 1961 was filed on September 9, 1963, more than 16 months late. His return for 1962 was filed on March 16, 1964, more than 11 months late. Petitioner would supply the reasonable cause required under the statute by explaining that he delegated the task of preparing and filing his return to an accountant and that any lateness was caused by the accountant's actions and not by his own. We are unable to agree that petitioner's reliance on his accountant in the circumstances of this case provided a reasonable cause for untimely filing. This is not a case of a taxpayer's reliance upon professional advice or judgment in relation to a question of tax law that may perhaps furnish reasonable cause for failure to file or for late filing in appropriate circumstances. Cf., e.g., Burton Swartz Land Corp. v. Commissioner 198 F. 2d 558 (C.A. 5), reversing a Memorandum Opinion of this Court. Rather, this case involves merely alleged reliance upon an accountant for the ministerial act of filing a return, which petitioner knew was required to be filed, and there is persuasive authority for the conclusion that such reliance does not constitute reasonable cause. Logan Lumber Co. v. Commissioner, 365 F. 2d 846, 853-854 (C.A. 5), affirming on this issue a Memorandum Opinion of this Court $ ;:$ Estate of William T. Mayer, 43 T.C. 403, affirmed 351 F. 2d 617 (C.A. 2), certiorari denied, 383 U.S. 935; Jane U. Elliott, 40 T.C. 304, 315; Edward C. Victorson, 21 T.C.M. 1238, affirmed on another issue 22 326 F. 2d 264 (C.A. 2); Ferrando v. United States, 52 A.F.T.R. 1924 (D.C.Cal.), affirmed 245 F. 2d 582 (C.A. 9). Cf. Estate of Frank Duttenhofer, 49 T.C. -. The opinion of the Court of Appeals in the Logan Lumber Co. case alone would be sufficient ground for deciding this issue against petitioner. However, the evidence before us indicates a personal carelessness or negligence on the part of petitioner himself that independently supports the additions under section 6651(a). True, Cochrane had told petitioner that he had obtained "indefinite" extensions of time within which to file petitioner's returns. But petitioner knew that there was no such thing as an "indefinite" extension. This alone should have put petitioner on notice that he could not with confidence rely upon Cochrane. Moreover, there was testimony that petitioner signed returns in blank and gave them to Cochrane, the obvious purpose of this testimony being to convince us that petitioner was unaware that Cochrane had not thereafter filed the returns. But we refuse to make any such inference. In the first place, when the returns were completed it would have been necessary for Cochrane to obtain a check from petitioner to pay the tax shown to be due. And in the second place, the record plainly indicates to us that petitioner in fact knew that the returns had not been filed. Further, Cochrane was hospitalized three times during the period June 3 - September 9, 1962, for psychiatric reasons, and, at the very least, it was incumbent on petitioner in the exercise of due care to check to see whether his returns had been filed or valid extensions obtained. Also, the fact that petitioner himself later consulted another accountant is persuasive that he had doubts about Cochrane's reliability. Finally, petitioner's own conduct in failing to cooperate with Cochrane by taking time to explain his records is an additional factor indicating personal negligence that played a part in the late filing of the returns. The fact that petitioner subsequently furnished the necessary cooperation must be considered in the light of the circumstance that an audit of his returns for previous years had begun, and this was long after the returns in question were originally due to be filed. Petitioner's various other attempts to show reasonable cause may be disposed of quickly. That petitioner and his accountant were extremely busy with a Congressional campaign provides no justification at all for late filing. Norman C. Demler, 25 T.C.M. 620, 627; J. Fleet Cowden, 24 T.C.M. 1528, 1533, affd. per curiam 365 F. 2d 832 (C.A. 1). The fact that petitioner's returns for 1960 and 1961 were being audited presents no justification whatever for untimely filing of his return for 1962. Martin A. Glowinski, 25 T.C. 934, affd. on other issues 243 F. 2d 635 (C.A.D.C.); Pioneer Automobile Service Co. 36 B.T.A. 213, 222. The mere application for an extension of time for filing the 1962 return provides no reasonable cause for its late filing. Cf. Morrison Industries Inc., 21 T.C.M. 853, 859; Lee Friend, 20 T.C.M. 858. There was no reasonable cause for the untimely filing of petitioner's income tax returns for 1961 and 1962. We so find as a fact. The Commissioner's imposition of the so-called penalty for late filing under section 6651(a) is sustained. 2. Negligence, section 6653(a): Section 6653(a), I.R.C. 1954, provides in part as follows: SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes. - If any part of any underpayment * * * of any tax imposed by subtitle A * * * is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment. The burden is on petitioner to show that the Commissioner's determination of an addition to tax under these provisions is erroneous. Cleveland Chiropractic College v. Commissioner, 312 F. 2d 203, 207 (C.A. 8); Carroll F. Schroeder, 40 T.C. 30, 34. An addition to tax under section 6651(a) does not prevent a further addition under section 6653(a). Robinson's Dairy, Inc. v. Commissioner, 302 F. 2d 42, 45 (C.A. 10). The parties are agreed that petitioner's income tax returns for 1960-1962 understated his taxable income in the following manner: 23 Year
Taxable income: PerReturn
Actual
1960
$10,405.91
$14,498.42
1961
10,291.16
29,548.38
1962$ Hnone
8,615.36 The understatements were due to certain unreported gross receipts from petitioner's legal practice, to excessive depreciation and amortization, to unreported long term capital gains, and to excessive business expense deductions. The primary factor was the understatement of gross receipts: petitioner's returns revealed only 73.8 percent of his gross receipts for 1960, 62.8 percent of his gross receipts for 1961, and 46.6 percent of his gross receipts for 1962. The omission of such large amounts of gross income is in itself persuasive evidence of negligence in the preparation of petitioner's returns. Cf. Little v. Helvering, 75 F. 2d 436 (C.A. 8); L. Glenn Switzer, 20 T.C. 759. As with regard to the so-called delinquency penalty, petitioner's excuse is that he relied on his trusted accountant Cochrane to prepare the returns and furnished him with all of his records. He contends that any negligence involved was on the part of the accountant and is not attributable to him. For several reasons, we cannot accept petitioner's contention as a basis for deciding in his favor. First, as in the case of the delinquency in filing, reliance on an agent, whether or not he be an expert, is no excuse for negligence in preparing an incorrect return where there is no doubt as to the taxability or deductibility of the items involved. Cf. Hyman B. Stone, 22 T.C. 893; Vern W. Bailey, 21 T.C. 678; Irving Fisher, 30 B.T.A. 433. In the instant case, petitioner has not attempted to show that there was any doubt about whether the unreported items were properly includable in gross income or about the proper amounts of the excessive deductions. This is not a case where income is understated because of expert advice as to the includability or deductibility of some item, where reliance on expert advice has been held to be a valid defense against the so-called negligence penalty. L. L. Moorman, 26 T.C. 666, 680; R. E. Nelson, 19 T.C. 575, 581; Rhett W. Woody, 19 T.C. 350, 355. Second, if we accept at face petitioner's testimony about giving his accountant returns signed in blank suggesting that he did not read or review those returns after completion, such practice, particularly for a person like petitioner, would itself reflect negligence on his part. Third, the understatement of gross receipts was due to unidentified deposits in petitioner's personal account which were not otherwise explained in books or records. We can only conclude on this record that petitioner maintained inadequate and incomplete records, which has often been held to be sufficient negligence in itself to support the imposition of the so-called negligence penalty. Carroll F. Schroeder, 40 T.C. 30, 34; Rudolf A. Zivnuska, 33 T.C. 226; H.A. Hurley, 22 T.C. 1256, affd. per curiam 233 F. 2d 177 (C.A. 6). A part of the underpayment of petitioner's income taxes for the years 1960, 1961, and 1962 was due to negligence. We so find as a fact. The Commissioner's addition to tax under section 6653(a) is sustained. Decision will be entered under Rule 50. ↩