**In re James Berry CRADDOCK, dba Craddock Development Company, et al., Debtor.**

**Bankruptcy No. 87 B 7172 E.**

United States Bankruptcy Court, D. Colorado.

Jan. 26, 1993.

J. Lawrence Hamil, Hamil Professional Corp., Denver, CO, for debtor.

Michael J. Norton, U.S. Atty., Mark E. Nebergall Sp. Trial Counsel Tax Div., Dept. of Justice, Washington, DC, for U.S. on behalf of I.R.S.

## OPINION AND ORDER ON ASSESSED PENALTIES

CHARLES E. MATHESON, Chief Judge.

The United States of America, through its agency, the Internal Revenue Service ("IRS" or the "Government"), conducted an

audit of the Debtor's ("Debtor" or "Craddock") tax returns for the tax years 1981, 1982, 1983 and 1985. After the completion of that audit, the IRS assessed taxes for each of those years. The IRS also assessed various penalties as provided by the Internal Revenue Code ("IRC").

The Court has heretofore considered the issues pertaining to the validity of the tax assessments. Left unresolved at that time was the question of the allowance of the assessed penalties. Those issues were set down for a separate evidentiary hearing. At the hearing the Debtor provided evidence by way of his testimony. He also presented the testimony of Robert J. Rudnick, a certified public accountant who had previously worked for the Debtor and who had prepared certain of the Debtor's tax returns.

The evidence presented at the hearing indicated that between the mid–1970s and through 1985 the Debtor's real estate business had expanded very rapidly. He certainly was aware of his obligation to keep adequate financial records and to file tax returns. However, because of the rapid growth of the business, the general complexity of his business affairs and multiple changes in the tax laws pertaining to the real estate industry, the Debtor had problems in being able to timely and accurately file returns. The testimony of Mr. Rudnick essentially confirmed this information.

The Debtor testified that he made various efforts to improve his record-keeping and the ability to timely and accurately deal with his taxes. He consulted with outside accountants, he hired and staffed an internal bookkeeping and accounting department and eventually hired Mr. Rudnick as an in-house accountant to deal with these matters.

The notice of deficiency issued by the IRS indicates that the additional taxes assessed arose out of essentially two different kinds of adjustments to the Debtor's taxable income. Many of the adjustments, and the kind primarily focused on by the Debtor, arose because the IRS asserted the Debtor erroneously treated certain income and expense items. These were judgmental matters where the view of the IRS differed from that of the Debtor's accountants. The other kinds of adjustment had to do with income which the Debtor had failed to report. As to this latter category there is no suggestion that the Debtor engaged in wilful tax evasion. On the other hand, the Debtor was unable to offer any explanation as to why such income had not been properly accounted for and included in his taxable income on the returns.

There are three types of penalties involved. The first is a penalty for the late-filing of returns. That penalty arises under IRC § 6651(a). The second is a penalty for negligence assessed under IRC § 6653(a). The third is for substantial understatement of taxes assessed under IRC § 6661 (as applicable to the tax years in question). Each type of penalty must be separately examined.

There is a threshold issue that must be addressed and that concerns the burden of proof. The Debtor has argued that while the proof of claim of the IRS stands as prima facie proof of its claim, the IRS, nonetheless, has the ultimate burden of proof on the assessment of the penalties. Regardless of what may have otherwise been stated by the Court, an examination of the statutes in question makes it clear that once a return has not been timely filed or taxes have not been timely paid or there is a substantial underpayment, the penalties are assessed as a matter of statute. The Debtor may get relief from such assessment by making an affirmative showing that the error was not due to negligence or that he used due and reasonable care in dealing with his taxes. Thus, it is the Debtor's burden to prove that the penalties should not be assessed.

## I. LATE–FILING PENALTIES.

There is no dispute about the fact that the Debtor's tax returns were not timely filed for the years 1981, 1982 and 1985. For the tax year 1983, the Debtor obtained extensions to October 15, 1984, within which to file the return, and the

return was postmarked on that date.[1] The statute provides that if a return is not timely filed, the IRS must automatically impose the late-filing penalty unless the failure is due to "reasonable cause and not due to wilful neglect." IRC § 6651(a). The Supreme Court has acknowledged that this statutory test equates to a question of whether the taxpayer exercised ordinary business care and prudence in the filing of his returns. As the Supreme Court has observed, the taxpayer should not be penalized for circumstances which are beyond his control. *United States v. Boyle*, 469 U.S. 241, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985).

■ The Debtor argues that he acted as a reasonable and prudent businessman in attempting to set up a bookkeeping system adequate to enable timely filing of his returns. He further argues that, in doing so, he reasonably relied on the services provided him by his accountants, both those on his staff and outside accountants. He argues that the authority of *In re Hudson Oil Co.*, 91 B.R. 932 (Bankr.D.Kan.1988) is particularly apt and supportive of his defense.

The Court does not agree with the Debtor's argument. It is clear that the Debtor had an obligation to timely file tax returns and that he was aware of that obligation. The essence of his argument is that he turned all of the information necessary for such purposes over to his accounting department and relied on them to file the returns. However, the Court must distinguish between the act of a taxpayer relying on an accountant for professional advice concerning the interpretation of the tax laws and relying on the accountant or other third parties to attend to the mechanics of filing tax returns.

The Supreme Court in *Boyle, supra,* focused on the difference between these two circumstances. The Court held that late-filing of a tax return is not excused just because the professional engaged to file

the return has not attended to the task. In this respect, the Fifth Circuit has observed:

> In our opinion [the taxpayer] is no better off even if it relied on its accountant to prepare its returns. The negligent failure of an accountant or lawyer to prepare taxpayer's return is not reasonable cause for failure to timely file. *Logan Lumber Co. v. Commissioner*, 365 F.2d 846 (5th Cir.1966).

The distinction between the present case and that presented in the *Hudson Oil* decision, *supra,* is clear. In *Hudson Oil,* the trustee in bankruptcy was dealing with financial records he inherited when he took over the case. This is the kind of situation recognized by the Supreme Court in *Boyle, supra,* where the circumstances were beyond the trustee's control.

■ Here, the circumstances were clearly within Mr. Craddock's ability to control. Yes, his business was large, growing and complex, but so is the business of General Motors and IBM. There is nothing to suggest that those corporate entities are excused from the timely filing of tax returns because of the size and complexity of their business. As the court observed in the *Logan Lumber* case, "if every taxpayer who forgot to file a return or was too busy to file a return escaped the penalty for failure to file, our tax system would soon collapse." *Logan Lumber, supra,* 365 F.2d at 848. The Court concludes that the penalty was properly imposed for the tax years 1981, 1982 and 1985.

With respect to the year 1983, the Debtor argues that the return was timely because it was filed before the expiration of the extension. The Government argues that the extension itself was invalid because the Debtor failed to timely pay the tax which is now asserted to be due.

■ The IRC authorizes the Commissioner to grant limited extensions of time to file returns and pay taxes. IRC § 6081. Regulations have been adopted which spec-

---

1. The IRS argued at the time of the hearing that "filed" means filed with the IRS and not deposited in the mail. The government has provided absolutely no authority for that rather startling position which is, of course, directly contrary to the explicit statutory provisions set forth in section 7502 of the Code.

ify that, upon application, an extension of time to file a tax return can be obtained, but the application for extension

> must show the full amount properly estimated as tax for such taxpayer for such taxable year, and such application must be accompanied by a full remittance of the amount properly estimated as tax which is unpaid as of the date prescribed for the filing of the return. 26 CFR § 1.6081–4.

The extension of time for the filing of the return does not, in any event, extend the time for payment of the tax. CFR § 1.6081–4(b).

No cases have been found construing section 6081 or the regulation promulgated thereunder, at least in the context herein presented. However, Revenue Ruling 79–113 did consider the application of the statute and it states:

> ... [I]f the taxpayer had, at the time the estimate was made, information discrediting the estimate, then the requirement that the tax be properly estimated will not have been met and the form 4868 will be considered as invalid. Rev.Rul. 79–113, 1979–1 C.B. 389 (1979).

In the instant case, a request for extension was apparently filed which asserted no taxes due. Taxes for 1983 have now been assessed in the sum of $539,672.00.

The Notice of Deficiency issued by the IRS shows that for 1983 there were a variety of adjustments made for judgmental matters—i.e., changes in amortization, disallowance of certain claimed business expenses, etc. However, substantial adjustments are also made due to the failure of the Debtor to include income from a variety of transactions.

It appears to the Court that when the request for extension was filed concerning the 1983 return, the Debtor in fact had ample evidence in his books and records discrediting the estimate of "zero" taxes owing. This is particularly true if the Debtor had included in his taxable income all of the income he actually received. Thus, the application for extension was invalid because of the failure of the Debtor to pay the "full amount properly estimat-ed." Therefore, the late-filing penalty is also properly imposed for the year 1983.

## II. NEGLIGENCE PENALTY.

Section 6653(a)(1) of the IRC specifies that "if any part of any underpayment ... is due to negligence (or disregard of rules or regulations), there shall be added to the tax an amount equal to 5% of the underpayment." IRC § 6653(a)(1). For the purpose of this section "negligence" is defined to include "any failure to make a reasonable attempt to comply with the provisions of this title, and the term 'disregard' includes any careless, reckless or intentional disregard." IRC § 6653(a)(3). The IRS has asserted a 5% negligence penalty for all four tax years which were examined. The Debtor disputes the application of that penalty. Again, the Debtor's defense is focused on his efforts to staff and maintain an accounting department which he believed or hoped would be sufficient to timely and accurately determine the taxes due. Because, he argues, he acted prudently in establishing such a tax department, he cannot have acted negligently.

The analysis used by the Court in determining the allowance of the late-filing penalties is largely applicable here. In reviewing the Notice of Deficiency on a year-by-year basis, it is apparent that certain of the adjustments made by the IRS were attributable to judgmental matters. It is equally apparent that a substantial increase in the taxes was due to omitted income including:

> 1981—approximately $4,000,000 excluded from the sale of property.
>
> 1982—$192,000 excluded from the sale of Harrison Park Tech III Bldg.; $175,-000 excluded from the sale of Newport Park Tech III Bldg.; $21,115 of gross income from dividends and interest was not included.
>
> 1983—Schedule C—excluded Gross Income from the Inn at West Vail of $243,852; gross receipts of $259,670 received by Debtor were not reported; Debtor misvalued property received in exchange by $475,000.
>
> 1985—Sale of Building 580 resulting in capital gain of $12,282 was not report-

ed; installment sale of property No. 14 resulting in capital gain of near $200,-000 in excess of amount reported etc.

■ Cases considering the negligence penalty recognize that a taxpayer's failure to include income is evidence, itself, of negligence. *Vocelle v. Commissioner*, 27 T.C.M. (CCH) 18, T.C. Memo 1968–005 ("The omission of such large amounts of gross income is in itself persuasive evidence of negligence in the preparation of petitioner's returns."); *American Properties, Inc. v. Commissioner*, 28 T.C. 1100 (1957); *Pritchett v. Commissioner*, 63 T.C. 149 (1974)—(The court affirmed the imposition of the negligence penalty when the taxpayer's accountant erroneously and by mistake omitted certain income from the return. "Petitioner must bear the ultimate responsibility for any negligent errors of his agent.")

In contrast to the above-cited authorities, the Court notes the holding of the court in *Gaddis v. United States*, 330 F.Supp. 741 (S.D.Miss.1971). In *Gaddis*, the taxpayer, like the Debtor here, was a large and rapidly expanding company which employed a large number of employees, had a full time bookkeeper, and maintained books and records, etc. The taxpayer was found to have reported all of his taxable income in his tax returns. However, several substantial adjustments were made to the tax mostly due to the taxpayer having mistakenly expensed items which should have been capitalized. Under these circumstances, the court held that the taxpayer had justifiably relied on the expertise of the accountant and his judgment on these matters and the filing of the return and underpayment of the tax was not due to negligence.

It is the unexplained omission of substantial amounts of tax, however, which leads the Court to conclude that some part of the tax assessed for each of the tax years in question is attributable to negligence. Thus, the 5% negligence penalty must be imposed as to the tax assessed.

### III. SUBSTANTIAL UNDERPAYMENT PENALTY.

Section 6661(a) of the IRC, as in effect for the tax years in question, also imposes a penalty if there has been a "substantial underpayment", as defined by that section. While the Debtor does not accept this Court's determination that the IRS has properly assessed taxes, the Debtor does not dispute the application of the substantial underpayment penalty to the deficiencies assessed except for the year 1985.

In his return for 1985, the Debtor treated his disposition of the Airport Raintree property as a financing transaction and fully disclosed this treatment. The IRS assessed taxes, finding that the disposition should have been treated as a sale, and this Court has so ruled.

The Debtor's argument, and the Court's analysis, require a review of the IRC provisions. The pertinent sections state:

SEC. 6661. SUBSTANTIAL UNDERSTATEMENT OF LIABILITY.

(a) *Addition to tax.*

If there is a substantial understatement of income tax for any taxable year, there shall be added to the tax an amount equal to 25% of the amount of any underpayment attributable to such understatement.

(b) *Definition and special rule.*

(1) Substantial understatement.

(A) In general. For purposes of this section, there is a substantial understatement of income tax for any taxable year if the amount of the understatement for the taxable year exceeds the greater of—

(i) 10 percent of the tax required to be shown on the return for the taxable year, or

(ii) $5,000.

. . . . .

(2) Understatement.

(A) In general. For purposes of paragraph (1), the term "understatement" means the excess of—

(i) the amount of the tax required to be shown on the return for the taxable year, over

(ii) the amount of the tax imposed which is shown on the return, reduced by any rebate (within the meaning of section 6211(b)(2)).

(B) Reduction for understatement due to position of taxpayer or disclosed item. The amount of the understatement under subparagraph (A) shall be reduced by that portion of the understatement which is attributable to—

(i) the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment, or

(ii) any item with respect to which the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return.

The Debtor argues that in determining the amount, if any, of the penalty, the "amount of the understatement" is to be reduced by the portion of the understated taxes attributable to the disclosed item. The Court does not agree with this sweeping analysis of the section. While that is a correct restatement of a part of the statute, it is just that—only a part. That does not end the analysis.

▬ The determination of whether a "substantial understatement" penalty applies must start with the definitional section to determine whether there is an "understatement" within the meaning of 6661(b)(2)(A). For the purpose of *this* section, the total tax actually due is calculated, from which is subtracted the amount actually shown on a return. The tax attributable to a disclosed item is then deducted as provided by section 6661(b)(2)(B). The test specified by section 6661(b)(1)(A) must then be applied to that remaining figure to determine whether the resulting understatement was "substantial." Thus, for the purpose of determining whether there was an "understatement" in 1985, the effect of the disclosed Airport Raintree assessment should be reversed out.

The Court does not have the information available to determine whether, after adjusting out the Airport Raintree transaction, there remained a "substantial understatement" in 1985, as defined in section 6661(b)(1)(A). The parties will have to make that calculation, or request a further hearing for such purpose. If, after adjustment for the Airport Raintree transaction,

there was no substantial understatement, then no penalty should be imposed. If, however, there remains a "substantial understatement", the penalty must be imposed, and it is in this regard that the Court's view of the statutory provisions may differ with that of the Debtor's.

Again, the Debtor's trial brief suggests that, in calculating the penalty, the amount of the understatement should be reduced to the extent the Airport Raintree transaction was disclosed. However, the reduction occasioned by section 6661(b)(2)(B)(ii) is only for the purpose of determining whether there has been a "substantial understatement" within the meaning of section 6661(b)(1)(A). If there remains a "substantial understatement", then, in the Court's view, the penalty imposed pursuant to section 6661(b)(1)(A) is imposed on the entire amount of the understatement which is, in fact, the manner in which the IRS has imposed the penalty.

## IV. CONCLUSION.

At the time of the hearing, the parties acknowledged that there were calculations which remained to be done. It was believed by the parties that, guided by the Court's ruling, they would be able to resolve and arrive at the final figures to be allowed as the claim of the IRS, subject, of course, to the rights of the parties to appeal whatever adverse decisions they believe this Court has made.

This is a long outstanding matter. It is necessary and appropriate that it be resolved and closed so that the claim of the IRS may be finally allowed and paid under the Debtor's Plan or this Court's judgment appropriately appealed. It is therefore

ORDERED, THAT the parties shall consult and shall file with the Court within thirty (30) days from the date of entry of this Order a proposed final order for allowance of the claims of the Internal Revenue Service consistent with this Court's rulings or, if the parties are unable to arrive at a final agreed figure, so advise this Court

and request a final hearing on these matters.