Peter J. **VAUGHN, Plaintiff-Appellant,**

v.

The **UNITED STATES,
Defendant-Appellee.**

Appeal No. 84–538.

United States Court of Appeals,
Federal Circuit.

Aug. 1, 1984.

---

Robert J. Murray, Omaha, Neb., argued for appellant. With him on the brief was David D. Begley, Omaha, Neb., of counsel.

Stanley S. Shaw, Jr., Washington, D.C., argued for appellee. With him on the brief were Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup and Ann Belanger Durney, Washington, D.C.

Before RICH, KASHIWA and SMITH, Circuit Judges.

KASHIWA, Circuit Judge.

Taxpayer, a former partner in Peppertree Apartments III, Ltd., appeals from a judgment of the Claims Court denying him a refund for $11,752.40 in income taxes paid for the years 1976 and 1977, 3 Cl.Ct. 316 (1984). The Claims Court held that Peppertree Apartments III, Co. (the corporation) was the owner of an apartment complex for federal tax purposes, and therefore, that certain losses generated by the property were attributable to the corporation and not to the partnership as claimed by taxpayer. We affirm the decision of the trial court on the ground that the corporation, which held title to the land, did not hold such title as an agent of the partnership.

### Background

On December 1, 1973, taxpayer, an attorney, and L. Vernon Cagle, a builder, formed a limited partnership, Peppertree Apartments III, Ltd. (the partnership) to construct and operate a large apartment complex in Council Bluffs, Iowa. Cagle was the general partner receiving a 90% interest in profits, losses, and the proceeds of any distribution. Taxpayer was the sole limited partner receiving a 10% interest. The partners contemplated that other limited partnership shares would be sold and some were subsequently sold.

On December 1, 1973 taxpayer and another individual also incorporated Peppertree Apartments III Co. (the corporation) under Iowa law. The corporation issued no stock but the two incorporators were named as directors. Taxpayer was also named as secretary-treasurer and Cagle as president.

On the same day the partnership and the corporation entered into a Nominee Agreement in which it was stated that the partnership wanted the corporation to act as its nominee to hold title to the real estate to facilitate financing and that the corporation was willing to act as nominee. The agreement provided that the corporation was to hold legal title and that the partnership was the sole beneficial owner. The agreement also provided that the corporation would act only as directed by the partnership; that the corporation would turn over to the partnership any cash or other property received with respect to the real estate; and that upon demand, the corporation would turn over the deed to the property to the partnership.

On January 18, 1974 the partnership entered into a contract to purchase the land for the construction of the apartment complex for $81,875. The partnership paid for the land, caused the deed to be issued to and recorded in the name of the corporation. On February 22, 1974 the corporation borrowed $1,500,000 construction financing from the Banco Mortgage Company in exchange for a mortgage. Nothing in the mortgage or note indicated that the corporation was acting as agent or nominee for the partnership.

A year later the corporation obtained $1,675,000 improvement financing from the United States National Bank of Omaha, executing a note, a mortgage, a financing

statement, and an assignment of rents to the bank. Nothing in these documents or the bank's records indicated that the corporation was acting as agent for the partnership. The corporation also obtained title insurance on the property.

The corporation was also involved in several lawsuits as owner of the property. In February 1974, taxpayer, as attorney for the corporation, protested an adverse zoning ordinance and sought a variance. Three suppliers also sued the corporation. In none of these suits did the corporation disclaim liability on the grounds that it was not the beneficial owner of the property. In two suits, however, the partnership was mentioned as a contractor. The corporation also obtained fire, bodily injury, and property insurance on the apartment complex in its own name.

In 1974 when the partnership and corporation were formed, taxpayer owned 10% of the partnership and Cagle, 90%. On the partnership tax returns for 1976 and 1977, the tax years in question, Cagle is listed as owning 50.5% and 90% of the partnership, respectively, and taxpayer as a 10% owner.

During 1976 and 1977 the apartment complex generated deductible losses. The partnership reported these losses as partnership losses and taxpayer reported his allocable share. The commissioner disallowed these deductions on the ground that the losses from the apartment complex were attributable to the corporation and not to the partnership resulting in tax deficiency of $4,671 for 1976 and $9,384 for 1977. Taxpayer paid the deficiencies and filed a claim for a refund. The Claims Court affirmed the decision of the commissioner holding that the corporation was a taxable entity and rejecting taxpayer's agency argument. This appeal followed.

## I

The only issue before us is whether the losses generated by the construction and operation of the apartment complex are attributable to the partnership, despite legal title lying in the corporation. Taxpayers have advanced two theories why a corporation should not bear the tax attributes of property to which it holds title, both of which have been addressed by the Supreme Court.

In *Moline Properties, Inc. v. Commissioner*, 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499 (1943), the Court made clear that a taxpayer cannot establish a corporation for business purposes and then expect that it be ignored for federal tax purposes. In that case an individual created a corporation, transferred property to it and the corporation assumed the mortgage debt. When the corporation eventually sold the property, the sole shareholder argued that because there was a practical identity between his financial affairs and those of the corporation, that the corporation should be ignored or disregarded for federal tax purposes. In rejecting taxpayer's argument, the Court stated:

> The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity. 319 U.S. at 438–39, 63 S.Ct. at 1134.

In the case at bar, taxpayer concedes that the corporation carried on sufficient business activity to be recognized as a separate taxable entity and, therefore, does not argue that the corporation should be ignored or disregarded for federal tax purposes. Instead taxpayer argues here, as he did below, that the corporation's activities in taking title to the land and executing notes and mortgages were performed only as the agent of the partnership and, therefore, the losses from the operation of the apartment complex were attributable to the partnership.[1]

---

**1.** In addition to addressing taxpayer's agency argument, the trial court also analyzed the busi-

In *Moline Properties*, the taxpayer also advanced an agency argument. In rejecting this argument the Court noted that there was no agency agreement nor the usual incidents of an agency relationship and stated that the mere existence of a corporation with stockholders does not make the corporation the agent of its shareholders. 319 U.S. at 440, 63 S.Ct. at 1134.

In *National Carbide Corp. v. Commissioner*, 336 U.S. 422, 69 S.Ct. 726, 93 L.Ed. 779 (1949), the Court again addressed the agency issue. In that case, a parent corporation and its three subsidiaries entered into an agency agreement whereby the subsidiaries were to operate and manage certain plants for the parent. The parent provided all the working capital and expertise, and in return the subsidiary turned over all the profits except for a nominal amount. The subsidiaries held title to the assets used, although they were purchased with funds supplied by the parent. The Court held that the subsidiaries were taxable on all the income they earned including amounts turned over to the parent, rejecting taxpayer's agency argument.

In reaching its conclusion that no valid agency existed, the Court again stated that ownership and control alone will not make the corporation the agent of its shareholders: "Ownership of a corporation and the control incident thereto can have no different tax consequences when clothed in the garb of agency than when worn as a removable corporate veil." 336 U.S. at 430, 69 S.Ct. at 731. The Court gave no effect to the agency agreement finding that the agreement, was "entirely consistent with the corporation-sole stockholder relationship whether or not an agency exists, and with other relationships as well." 336 U.S. at 436, 69 S.Ct. at 734. The Court held that the subsidiaries were not true corporate agents, concluding that the subsidiaries owned the assets which produced the income and that the subsidiaries turned over

their earnings to their parent not because of any agency but because the corporation owned and controlled them. The Court, however, left open the possibility that a true corporate agent could exist:

What we have said does not foreclose a true corporate agent or trustee from handling the property and income of its owner-principal without being taxable therefor. Whether the corporation operates in the name and for the account of the principal, binds the principal, by its actions, transmits money received to the principal, and whether receipt of income is attributable to the services of employees of the principal and to assets belonging to the principal are some of the relevant considerations in determining whether a true agency exists. If the corporation is a true agent, its relations with its principal must not be dependent upon the fact that it is owned by the principal, if such is the case. Its business purpose must be the carrying on of the normal duties of an agent. 336 U.S. at 437, 69 S.Ct. at 734.

II

Following *National Carbide* there have been a plethora of cases in which taxpayers have transferred property to a corporation and have argued that the corporation merely held title to the property as an agent for the taxpayers. In applying the above principles, courts have focused on the relationship between the purported agent and principal and have generally refused to give agency agreements effect where they have concluded that the relations between the two were entirely consistent with the usual control exercised by shareholders over their corporation. *See, e.g. Roccaforte v. Commissioner*, 708 F.2d 986 (5th Cir.1983); *Jones v. Commissioner*, 640 F.2d 745 (5th Cir.), *cert. denied*, 454 U.S. 965, 102 S.Ct. 507, 70 L.Ed.2d 381 (1981); *Harrison Property Management Co. v. United*

---

ness activities of the corporation and concluded that the corporation carried on sufficient business activity to be recognized as a separate taxable entity. We, however, do not address this issue since taxpayer concedes as much and we agree with taxpayer that not only are the two theories distinct but are in fact contradictory.

*States,* 475 F.2d 623 (Ct.Cl.1973). As was stated recently by the Fifth Circuit:

> Closely-held corporations often function as agents or surrogates for their owners. Under *Moline,* however, they are treated as separate, taxable entities. If a taxpayer could, by the simple expedient of relying upon characteristics common to all such corporations, avoid tax liability, the separate entity regime would collapse. To prevent abuse, the taxpayer should be required to show more than those agency attributes that arise naturally from ownership and control of the corporation—he should be required to show that an agency relationship could exist independent of such ownership and control. This is precisely what ... *National Carbide* requires. [*Roccaforte,* 708 F.2d at 990].

In the case at bar, taxpayer advances to this court the same argument that he made below, namely, that the agency relationship was not dependent upon the fact that the corporation was owned by the partnership because in 1976 the corporation was owned solely by Mr. Cagle while 59.5% of the partnership was owned by persons other than Mr. Cagle.[2] Therefore, taxpayer contends that there was no complete identity of ownership between the two entities. Although in *National Carbide* the purported principal owned the purported agent, subsequent cases have found the requisite ownership where the same parties own a controlling interest in both entities. *See, Roccaforte,* 708 F.2d at 987; *Jones,* 640 F.2d at 752; *Taylor v. Commissioner,* 445 F.2d 455 (1st Cir.1971). That is the situation that existed in this case.

At the time the partnership was formed, December 1, 1973, taxpayer and Cagle were the only two partners, Cagle owning 90% of the partnership and taxpayer, 10%.

On the same date, taxpayer and another individual formed the corporation. The corporation issued no stock but taxpayer was named as secretary-treasurer and Cagle as president. Also on the same date, the partnership and the corporation executed the nominee agreement, upon which taxpayer so heavily relies. These facts offer no basis for taxpayer's assertion that the entities were not under common control since both were controlled by the same individuals at the time the agency agreement was executed.[3]

As to taxpayer's argument that Cagle owned the corporation, the trial court determined that this was not borne out by the record. Because no stock was issued and the corporation was formed as an integral part of the partnership arrangement, the court found that the corporation was owned on behalf of all the partners. On the record before us, we cannot conclude that this finding was clearly erroneous. *Heisig v. Department of Army,* 719 F.2d 1153 (Fed.Cir.1983).

Taxpayer also argues that this case is governed by *Carver v. United States,* 412 F.2d 233 (Ct.Cl.1969), decided by one of our predecessor courts. However, in *Carver* one joint venturer owned no stock in the corporation which took title to the property involved in that case. What the taxpayer succeeded in proving in *Carver* and what taxpayer has failed to establish in this case is the fact that the individual who owned the corporation did not control the joint venture as well.

Moreover, nothing in the record indicates that the entities dealt with each other at arm's length. Most telling is the fact that despite taxpayer's vigorous protests to the contrary, the corporation never received compensation for the substantial services

---

**2.** The tax forms of the partnership for the years in question indicate that Cagle owned 50.5% of the partnership in 1976 and 90% of the partnership in 1977 and that taxpayer owned 10% for both years.

**3.** As the Court of Claims stated in *Harrison Property Management,* 475 F.2d at 627:

> *National Carbide* makes it clear that the formal designation of "agency agreement" is not conclusive; the significant criteria, as we understand them, are whether the so-called "agent" would have made the agreement if the so-called "principals" were not its owners, and conversely whether the "principals" would have undertaken the arrangement if the "agent" were not their corporate creature.

rendered nor reimbursements for its expenses. As other courts have found, an independent agent would not be willing to perform services for its principal without compensation. *See, Roccaforte* 708 F.2d at 990; *Ourisman,* 82 T.C. 171, 184 (1984). On these facts, we agree with the trial court's conclusion that the corporation would not have been willing to enter into the agreement which it did with the partners if the latter did not own and control it.

## III

In *National Carbide,* the Court stated that "[i]f the corporation is a true agent, its relations with its principal must not be dependent on the fact that it is owned by the principal", 336 U.S. at 437, 69 S.Ct. at 734. The fact that this requirement is stated in mandatory language has led one court to conclude that failure to meet this requirement is fatal to any agency. *Roccaforte,* 708 F.2d at 989. If the principal and agent are under common ownership and control and if the entities did not deal at arms length, then that ends a need for further inquiry. No agency relationship can be established. The Tax Court, however, has concluded that a taxpayer should be entitled to establish that a true agency relationship exists, despite the fact of common ownership or control, by proving that other indicia of an agency are present in a particular case. In effect, the Tax Court has held that by proving what the Court in *National Carbide* termed relevant considerations of an agency are present in a particular case, a taxpayer has proven that the relations between the two entities are independent of ownership and control. *Roccaforte v. Commissioner,* 77 T.C. 263 (1981); *Ourisman v. Commissioner,* 82 T.C. at 185–86 (1984).[4]

In the case at bar, the trial court found that not only did the corporation enter the agreement with the partners because the latter owned and controlled it but also that taxpayer failed to establish other objective criteria of an agency. The trial court relied on the agency factors listed by the Court in *National Carbide* in making this determination and on the basis of those considerations, we agree that taxpayer has failed to establish an agency relationship under the particular facts of this case.

As to the first consideration, whether the corporation operates in the name of and for the account of the principal, it is clear that in obtaining the financing to the property, the corporation operated in its own name rather than for the account of the partnership. It is undisputed that all of the loan documents were in the corporation's name. Taxpayer attempts to undermine the trial court's factual conclusions as to this issue by stating that the banks which made the loans and other individuals were aware of the agency relationship. However, the bank officer who handled the real estate department and who actually arranged for the loan testified that he was not aware of any agency status of the corporation as borrower. Moreover, as the trial court stated, there was evidence that some suppliers and contractors believed they were dealing with the corporation as owner of the property since they brought suit against it for unpaid bills. It is also undisputed that the corporation obtained insurance on the property in its own name.

As to the second consideration, whether the principal is bound by the agency's actions, taxpayer fares no better. Again, as found by the trial court, none of the partners were personally liable on the mortgage note signed by the corporation, and the lenders were not aware of the purported agency relationship. Taxpayer argues that Cagle's execution of a building completion agreement on the interim financing

---

4. In *Roccaforte* the Fifth Circuit reversed the tax court's finding of a valid agency solely on the grounds that the relations between the two entities involved in that case were based on ownership and control. However, in a more recent case, *Moncrief v. United States,* 730 F.2d 277, 84–1 U.S.T.C. ¶ 9417 (5th Cir.1984), the court indicated that it was becoming more sympathetic to the tax court's view that despite the fact that entities are under common ownership and control, a taxpayer can still establish a valid agency by proving other indicia of an agency are present in a particular case.

somehow alters this result. However, Cagle wore many hats in this job including as a contractor through another corporation, Cagle, Inc., and it is not clear in what role he signed the building completion agreement. What is clear is that none of the partners were personally liable on the mortgage notes.

All parties and the trial court agreed that the third factor, whether the agent transmits money received to the principal, is not particularly relevant to this case. As to the fourth factor, whether receipt of income is attributable to the assets or employees of the partnership or the corporation, the trial court concluded that the corporation owned the assets because it could not have obtained financing unless it owned the property. We see no basis to disturb that conclusion in this case.

Finally, is the question of whether the corporation's activities were consistent with the normal duties of an agent. Although we agree with taxpayer's assertion that the trial court misstated the issue as being whether use of the corporation as an agent of the partners served the partner's purpose, this does not alter the result of this case. We conclude that the corporation's activities were not consistent with its claims of agency. As we pointed out above, the corporation failed to reveal any agency status both to creditors and other individuals; the corporation assumed full liability on the note; and the corporation defended lawsuits and obtained insurance in its own name. Such activities are not the normal duties of an agent.[5]

We do not conclude that a controlled corporation may never hold title to property as an agent of its owners. We do conclude that under the particular facts of this case, where the corporation frequently failed to reveal any agency status, where none of the partners were personally liable on the note, where in effect the corporation asserted to the outside world that it owned

the property, that taxpayer has failed to meet his heavy burden of showing that a true agency relationship existed. We, therefore, affirm the decision of the trial court that the corporation was the owner of the property for federal tax purposes.

AFFIRMED.

---

5. Taxpayer relies heavily on the Tax Court's opinions in *Roccaforte v. Commissioner,* 77 T.C. 263 (1981), rev'd 708 F.2d 986 (5th Cir.1983) and *Ourisman v. Commissioner,* 82 T.C. 171 (1984).

However, in both those cases taxpayers made certain that all creditors were aware of the agency relationship and that the partners were personally liable on the mortgage notes.