ROBERT A. MUNROE AND GERALDINE MUNROE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Munroe v. Commissioner
Docket No. 2236-90
United States Tax Court
T.C. Memo 1991-48; 1991 Tax Ct. Memo LEXIS 69; 61 T.C.M. (CCH) 1797; T.C.M. (RIA) 91048; February 7, 1991, Filed *69 Decision will be entered for the respondent. Robert A. Munroe, pro se. Cathleen A. Jones, for the respondent. COUVILLION, Special Trial Judge. COUVILLION
MEMORANDUM OPINION The petition in this case was filed pursuant to section 7463. [1] At trial, petitioners moved, under Rule 172(c), that the case be considered pursuant to section 7443A(b)(3) and Rule 180 et seq. The motion was granted. Subsequent to trial, respondent filed an answer of general denial. In two notices of deficiency, respondent determined deficiencies and additions to petitioners' Federal income taxes as follows: Additions To Tax
Section Section Section Year
Deficiency
6651(a)(1)
6653(a)(1)
6653(a)(2)
1982
$ 3,157.88
$ 909.61
$ 398.16
*
1983
$ 3,070.32
$ 849.64
$ 351.15
*
1984
$ 3,008.62
$ 752.38
$ 182.98
*
1985
$ 3,464.02
$ 928.42
$ 330.70
*
*70 Respondent made several adjustments to petitioners' income tax returns which resulted in the above deficiencies and additions to tax. However, in their petition, petitioners only challenged respondent's disallowance of interest expenses related to petitioners' wholly owned corporation, claimed on Schedule C of their returns. At trial, in addition to the evidence presented on the interest question, petitioners also presented evidence as to the addition to tax under section 6651(a)(1). Respondent did not object to this evidence. In their post-trial brief, petitioners addressed the section 6651(a)(1) issue. Respondent filed a statement declining to file a post-trial brief. Since the section 6651(a)(1) issue was raised at trial, and respondent interposed no objection, the Court deems the pleadings to have been informally amended to include the section 6651(a)(1) adjustment as an issue for consideration. *71 Ruge v. Commissioner, 26 T.C. 138 (1956). All other adjustments, however, except the interest related to petitioners' wholly owned corporation and the section 6651(a)(1) addition to tax are deemed conceded by petitioners. Rule 34(b)(4). Some of the facts were stipulated and such facts, with the annexed exhibits, are incorporated herein by reference. Petitioners, husband and wife, were residents of the State of Kansas at the time they filed their petition. They were divorced on April 16, 1984. Robert A. Munroe (petitioner) is an attorney who was in private practice at Augusta, Kansas. Petitioners had a son, Allen S. Munroe (the son), who was a consulting geologist at Augusta. Sometime in 1980, petitioner and his son decided to purchase an old office building in Augusta, which they would renovate and share in connection with their respective practices. Accordingly, the two formed a corporation, M & M Building, Inc. (the corporation), and, on August 1, 1980, the building was purchased in the name of the corporation. Petitioner owned two-thirds of the corporation, for which he paid in $ 2,400 as a capital contribution, and his son owned one-third, for which *72 he paid $ 1,200 as his capital contribution. It was understood that petitioner's law practice would take up two-thirds of the building, and the son's geology practice would utilize one-third. As anticipated, the building was in need of extensive renovation, and petitioner and his son arranged a line of credit with their local bank to pay for the renovations. Several notes were executed by the corporation, as follows: $ 33,000.00, January 26, 1981, due July 25, 1981; $ 33,000.00, July 25, 1981, due January 21, 1982; $ 51,250.00, February 16, 1982, due February 20, 1983; $ 50,032.32, May 4, 1983, due April 25, 1990; $ 40,100.00, June 10, 1986, due June 10, 1996.
For the most part, each of the notes refinanced the previous note and included whatever additional financing which was required as the renovation progressed. The renovation was completed sometime during 1984. Petitioner and his son endorsed the corporation's notes and, in addition, the notes were secured by a mortgage on the building. The last note, $ 40,100 was with a different local bank and the proceeds of that loan paid the other local bank. In addition to the loans in the name of the corporation, petitioners *73 also individually borrowed $ 22,000 on July 9, 1981, and secured that note with a mortgage on other real estate they owned. Although the corporation was not an obligor on this loan, nor was the office building mortgaged to secure the note, the Court assumes and, therefore, finds that the proceeds of that loan were also used in the building renovation, and this loan was included in notes subsequently executed by the corporation which refinanced the earlier obligations. In November 1981, petitioner's son changed his plans and decided to accept employment with a firm in Wichita, Kansas. As a result, he decided not to continue in the ownership of the office building. Accordingly, petitioner purchased his son's one-third interest in the corporation and continued with the renovation of the building. The local bank released the son as guarantor of the corporation's indebtedness. Title to the building has always remained in the corporation. No lease or other arrangement was ever executed or agreed to between petitioner and the corporation. All payments of principal and interest on the corporation's indebtedness have been made by petitioners. For Federal income tax purposes, petitioners *74 considered the building as their own and claimed deductions related to the building for depreciation, insurance, repairs, property taxes, and interest. For the years in question, the interest payments were, respectively, $ 13,812, $ 10,797, $ 8,282.07, and $ 7,309, for 1982, 1983, 1984, and 1985. Respondent disallowed the interest on the ground that the indebtedness was not that of petitioners. Respondent, however, made no adjustments with respect to the depreciation, insurance, repairs, and taxes. Petitioner contends that the corporation should be ignored as an entity; that the corporation was not the owner of the building and had no resources for payment of the building indebtedness; and that all payments on the corporate debt has in fact been made by petitioners. Accordingly, petitioner's position is that the corporation was a "dummy" or shell corporation. The parties stipulated that, if called upon to testify, the presidents of both banks which extended the financing would have testified that the loans were made to the corporation based upon petitioner's credit and not that of the corporation which, to their knowledge, would not generate income to repay the loans. Petitioner *75 further contended that, even if the corporation had at any time owned the building, the corporation divested itself of ownership on February 15, 1981, when a resolution was adopted by the corporation's board of directors to this effect. Pursuant to this resolution, a deed was prepared and executed conveying the property from the corporation to petitioners. The deed was never recorded and was later either lost or misplaced. Petitioner was unable to produce the deed or a copy thereof at trial. Petitioner testified that there were three reasons why the corporation acquired and held title to the building. One reason was to enjoy the benefits of limited liability. He and his son knew that extensive renovations would be required on the building, and they wished to shield themselves from liabilities to third parties which might arise out of the renovation, even though they carried liability insurance. The second reason was that petitioner's wife had a history of mental illness which, at one time, required her commitment to an institution. If the building was titled in a corporation, it would facilitate any legal transactions which might be required relative to the building. Finally, *76 since petitioner and his son were to share the building in their respective professions, they felt it best to have their offices titled in a corporation owned by them proportionate to their respective use and ownership of the building. Respondent's determinations in a notice of deficiency are presumed correct, and the burden of proof is on the taxpayer to show that respondent's determinations are in error. Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142(a). Under section 162(a), there is allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Interest paid or accrued on indebtedness is a deductible expense. Section 163(a). However, the indebtedness must be that of the taxpayer, not that of another. Borchert v. United States, 757 F.2d 209, 211 (8th Cir. 1985); Smith v. Commissioner, 84 T.C. 889, 897 (1985), affd. 805 F.2d 1073 (D.C. Cir. 1986). Petitioner's position is that the corporation should be ignored as a corporate entity because the corporation was a shell or dummy. Petitioner testified that he was not claiming *77 the corporation as his agent. [2] The record of this case does not support a finding that the corporation was an agent for petitioners such that petitioners, as principal, could be deemed to be the obligor or debtor of the indebtedness contracted in the name of the corporation. *78 In Strong v. Commissioner, 66 T.C. 12 (1976), affd. without published opinion 553 F.2d 94 (2d Cir. 1977), this Court considered the question whether a corporation, organized for the purpose of holding title to real estate in order to avoid usury laws on interest, should be disregarded as a sham or dummy corporation. Citing Moline Properties v. Commissioner, 319 U.S. 436, 87 L. Ed. 1499, 63 S. Ct. 1132 (1943), this Court held that, if the corporation was intended to, or did in fact act in its own name with respect to property, its ownership thereof will not be disregarded. Strong v. Commissioner, supra at 24. The use of a corporation to avoid usury was held in Strong v. Commissioner, supra at 24, to be a "business purpose' within the meaning of Moline Properties v. Commissioner, supra. Certainly, the use of a corporation to afford shareholders limited liability from the claims of third persons can hardly be anything but a valid business purpose. Even if the corporation was organized for the "creator's personal or undisclosed convenience," such purpose can constitute a business purpose. *79 Moline Properties v. Commissioner, supra at 438-439. This Court, in Strong v. Commissioner, supra at 24, held: In short, a corporate "straw" may be used to separate apparent from actual ownership of property, without incurring the tax consequences of an actual transfer; but to prevent evasion or abuse of the two-tiered tax structure, a taxpayer's claim that his controlled corporation should be disregarded will be closely scrutinized. If the corporation was intended to, or did in fact, act in its own name with respect to property, its ownership thereof will not be disregarded. The degree of corporate purpose and activity requiring recognition of the corporation as a separate entity is extremely low. Thus, it has been stated that "a determination whether a corporation is to be considered as doing business is not necessarily dependent upon the quantum of business" and that the business activity may be "minimal." See Britt v. United States, 431 F.2d 227, 235, 237 (5th Cir. 1970).
The facts of this case do not support petitioners' contention that their corporation should be disregarded or ignored as a corporate entity. The three *80 reasons enumerated by petitioner for organizing the corporation were all valid purposes for which corporations are generally utilized in the business world. Moreover, petitioner testified that he and his son actually contributed money to the corporation for their stock. This hardly squares with the argument that the corporation was a shell or dummy. Petitioners contend that, even if the corporate entity cannot be disregarded, the corporation effectively divested itself of title to the building in 1981, prior to the years in question; therefore, petitioners are entitled to a deduction of their interest payments. Although petitioner testified that a deed was prepared and executed, conveying title in the building to them, the deed was never recorded and has since been lost. Petitioner testified that the deed was not recorded because, at the time, he continued to have reservations about his wife's condition. The Court notes, additionally, that the building renovation had just commenced and was in progress, and petitioners' son, as of February 1981, had not then made his career change. In short, the Court finds that the same business purposes existed for not recording the deed as *81 existed for organization of the corporation in the first place. The public records throughout the years at issue reflected ownership of the property in the corporation. Petitioners, throughout this period, enjoyed the advantages and business purposes for which the corporation was formed. As this Court stated in Strong v. Commissioner, supra at 26, "Having set up a separate entity through which to conduct their affairs, petitioners must live with the tax consequences of that choice." This Court, therefore, declines to attribute any significance to the purported transfer of title by the corporation. The Court recognizes that one $ 22,000 loan was contracted for by petitioners personally and was not a corporate obligation. Petitioners, however, failed to establish what portion of the interest at issue represented interest on this obligation. Since this note was in sequence with other notes executed by the corporation, and since the $ 22,000 note is found to have been rolled over and refinanced in the corporation's subsequent notes, it is evident that petitioners were personally obligated for a very short time on this personal indebtedness. The Court declines *82 to attribute any portion of the interest in question to this indebtedness. The Court attaches no significance to the fact that respondent allowed petitioners' deductions for depreciation, insurance, repairs, and property taxes on the building and, for reasons of its own, chose only to disallow the interest. The law is well established that respondent is not estopped and is not bound by the erroneous acts or omissions of its agents. Estate of Emerson v. Commissioner, 67 T.C. 612, 617-618 (1977); see also Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 1 L. Ed. 2d 746, 77 S. Ct. 707 (1957). Accordingly, respondent is sustained in the disallowance of petitioners' interest expenses. Respondent determined an addition to tax under section 6651(a)(1). Section 6651(a)(1) applies where there is a failure to file an income tax return on the date prescribed by law unless it is shown that the failure to timely file was due to reasonable cause and was not due to willful neglect. The parties stipulated that petitioners' 1982 and 1983 returns were filed on January 14, 1987, and the 1984 and 1985 returns were filed on January 8, 1987. Under section 6072(a) and section 1.6072-1(a), *83 Income Tax Regs., the income tax returns of individuals are required to be filed on or before the 15th day of the fourth month following the close of the taxable year with exceptions not pertinent here. Petitioners do not dispute that their returns were not timely filed. Petitioner testified that he failed to timely file his returns because of financial and other personal problems. He owned a plastic manufacturing business which experienced the loss of its principal contract and resulted in petitioner's losing the business. Petitioner's wife had continuing mental problems, and they divorced in 1984. Petitioner was heavily in debt and had children in college. He had a bookkeeper who did not know bookkeeping and, as he testified, "snarled" his books. In short, petitioner testified his life was in ruins, he was overloaded, and he just "could not put his act together." The Court does not doubt that petitioner experienced the problems just described. However, in the four-year period which intervened from the date the earliest return was due until the date the returns were filed, petitioner maintained a law practice and successfully saw through the renovation of the office building. *84 In addition, petitioner had, for several years, engaged a public accountant to prepare his income tax returns. The Court is not satisfied that, given the problems cited by petitioner, he could not have filed timely returns. In Goode v. Commissioner, T.C. Memo 1981-548, marital problems of the taxpayer did not constitute reasonable cause for the taxpayer's failure to timely file. A heavy workload is also not reasonable cause for failure to timely file. Pioneer Automobile Service Co. v. Commissioner, 36 B.T.A. 213 (1937). Concentration on financial endeavors is also not reasonable cause. Smith v. Commissioner, T.C. Memo 1984-114. On this record, the Court finds that petitioners did not establish reasonable cause for the failure to timely file their income tax returns. Respondent, therefore, is sustained on this issue. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended and in effect for the taxable years in question, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 50% of the interest due on the underpayment attributable to negligence or intentional disregard of rules or regulations.↩
2. In Bollinger v. Commissioner, 485 U.S. 340, 99 L. Ed. 2d 357, 108 S. Ct. 1173 (1988), affg. 807 F.2d 65 (6th Cir. 1986), affg. a Memorandum Opinion of this Court; George v. Commissioner, 844 F.2d 225 (5th Cir. 1988), on remand from the Supreme Court, affg. a Memorandum Opinion of this Court; Frink v. Commissioner, 846 F.2d 5 (4th Cir. 1988), on remand from the Supreme Court, affg. a Memorandum Opinion of this Court, the taxpayers established corporations as their agents in the ownership of real estate and were allowed deductions related to the real estate titled in the name of the agent corporation. See also Roccaforte v. Commissioner, 77 T.C. 263 (1981); and Ourisman v. Commissioner, 82 T.C. 171 (1984), where the taxpayers established the agency relationship. Both cases, however, were reversed, respectively, at 708 F.2d 986 (5th Cir. 1983) and 760 F.2d 541 (4th Cir. 1985). Since both cases antedated Bollinger v. Commissioner, supra, it is evident that the rationale of Bollinger v. Commissioner, Usupra, is applicable to factual situations as was found by the Tax Court in Roccaforte and Ourisman↩.